<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SUNDEL QUILES, et al.,** *Plaintiffs,* v. **WAL-MART STORES, INC. d/b/a WALMART,** *Defendant.* | **Civil Action No. 16-9479** **OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Named Plaintiffs Sundel Quiles's ("Quiles"), Victoria J. Martin's ("Martin"), James M. Shea's ("Shea"), Angela Cox's ("Cox"), and George J. Bray, Jr.'s ("Bray," or together with Quiles, Martin, Shea, and Cox, "Plaintiffs") Motion for Class Certification, ECF No. 95. For the reasons that follow, Plaintiffs' motion is **DENIED**.

**I.   BACKGROUND**

**A.   Factual Background**

This action arises from Defendant Wal-Mart Stores, Inc. (d/b/a Walmart)'s ("Defendant" or "Wal-Mart") alleged misclassification of its Overnight Assistant Store Managers ("Overnight ASMs") as exempt executive and administrative employees.

During the relevant class periods, Defendant has operated approximately 100 retail stores in New York and 63 retail stores in New Jersey. Meredith Decl. ¶ 3, ECF No. 98.3. Each store typically employs between four and 15 ASMs who report to either the Store Manager or, if the store has one, a Co-Manager. Id. ¶ 7. According to Defendant, "[w]ithin each store, ASM roles vary significantly." Id. ¶ 10. For example, some ASMs are "front end," meaning that they manage

hourly customer service, cashier, and accounting personnel, some manage food and specialty departments, and some work the overnight shift. Id. ¶¶ 10-11. ASMs can "manage more than one department," and they "frequently rotate into and out of different ASMs roles based upon store needs." Id. ¶ 10.

Plaintiffs are current and former Overnight ASMs who worked in Defendant's New York and New Jersey retail stores. Overnight ASMs are generally scheduled to work four 12-hour overnight shifts per week, "resulting in a 48-hour work week." Id. ¶ 11. They supervise on average 40 hourly associates per shift. Id. ¶ 13. Overnight ASMs are classified as exempt executive and administrative employees and do not receive overtime compensation. See Am. Compl. ¶¶ 41, 48, 79-80, ECF No. 15. Instead, they are paid a fixed annual salary. See id. ¶ 41. According to Plaintiffs, because of "rampant understaffing" and "aggressive restrictions on overtime labor costs," Overnight ASMs primarily perform non-managerial duties and "are in essence associates, who spend their time replenishing inventory and stocking." Pls.' Br. at 11, 15; see also Am. Compl. ¶ 78. As such, Plaintiffs claim that Overnight ASMs have been misclassified and are entitled to overtime compensation under the applicable state wage-and-hour laws.

### B. Procedural History

Plaintiffs filed this action on December 27, 2016, on behalf of themselves and all other similarly situated individuals. See Compl., ECF No. 1. In March 2017, Plaintiffs filed an Amended Complaint on behalf of themselves and two putative classes, alleging: (1) violations of the overtime provisions of the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. §§ 34:11-56a et seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650, 661; and (2) violations of the notice and recordkeeping requirements of the NYLL and accompanying regulations, N.Y. Lab. Law §§ 195, 661. See Am. Compl. ¶¶ 113-30. Plaintiffs initially moved

for certification of the putative classes on July 13, 2018. ECF No. 58. After Defendant filed its opposition thereto, Plaintiffs requested that the Court strike any declarations relied upon by Defendant from witnesses who were not disclosed during discovery. ECF Nos. 63 & 66. On February 28, 2019, the Court terminated the initial class certification motion to allow Plaintiffs additional time to depose any declarants relied upon by Defendant. ECF No. 85. Plaintiffs filed a renewed class certification motion on August 2, 2019, which Defendant opposed. ECF Nos. 95 & 98.

## II. PROPOSED CLASSES

Plaintiffs seek certification of two classes of Overnight ASMs:

1. A "New Jersey Class" consisting of "All persons who have worked for Defendant as an Overnight Assistant Store Managers [sic] in New Jersey at any time between December 27, 2014 to the entry of final judgment in this case . . ., and who have not been paid all wages owed to them, including overtime premiums, in violation of the NJWHL."

2. A "New York Class" consisting of "All persons who have worked for Defendant as an Overnight Assistant Store Managers [sic] in New York State at any time between December 27, 2010 to the entry of final judgment in this case . . ., and who have not been paid all wages owed to them, including overtime premiums, in violation of [the] NYLL."

Pls.' Br. at 1-2.[1]

## III. LEGAL STANDARD

### A. Class Certification

A plaintiff seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23. Rule 23(a) sets forth four prerequisites to class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. See Fed. R. Civ. P. 23(a). If

---

[1] Plaintiffs initially sought to represent all ASMs "and/or employees holding comparable positions but different titles." Am. Compl. ¶¶ 102-03. In their motion, however, Plaintiffs limited their certification request to Overnight ASMs only. See Pls.' Br. at 1 n.1.

the plaintiff meets those requirements, the Court must then determine whether the class is maintainable under one of the provisions of Rule 23(b).  See Ferreras v. Am. Airlines, Inc., 946 F.3d 178, 182 (3d Cir. 2019).  Rule 23(b)(3) permits class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In addition to the explicit requirements of Rule 23(b)(3), the Third Circuit has recognized an "implicit ascertainability requirement."  Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015).  A class is ascertainable if: (1) it can be "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."  Id. at 163 (internal citations and quotation marks omitted).  A plaintiff may also seek class certification "with respect to particular issues" under Rule 23(c)(4).  Fed. R. Civ. P. 23(c)(4).

Class certification is appropriate "only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met."  In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008) (internal citation and quotation marks omitted).  The plaintiff bears the burden of establishing each Rule 23 requirement by a preponderance of the evidence.  See Mielo v. Steak 'n Shake Operations, Inc., 897 F.3d 467, 484 (3d Cir. 2018).  Before a class can be certified, "the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits."  In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 307.[2]

---

[2] While Plaintiffs make reference to an "initial class certification phase," Pls.' Br. at 2, Rule 23 does not permit conditional class certification.  See Ferreras v. Am. Airlines, Inc., 946 F.3d 178, 183 (3d Cir. 2019).  Rather, "Rule 23 requires a district court to be satisfied by a preponderance of the evidence that the plaintiff has proven each of the Rule's requirements . . . at the time of class certification," and "initial evidence" will not suffice.  Id. at 184.

### B. Overtime Exemptions

Plaintiffs claim that Defendant improperly classified Overnight ASMs as exempt executive and administrative employees in violation of the NJWHL and the NYLL. Under both statutes, employees who work in excess of 40 hours per week are entitled to overtime compensation, unless they are "employed in a bona fide executive, [or] administrative . . . capacity." N.J.S.A. § 34:11-56a4(b)(1); see also N.J.A.C. 12:56.7-1; 12 N.Y.C.R.R. 142-2.2.[3]

The executive exemption applies, in relevant part, to employees: (1) "[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;" (2) "[w]ho customarily and regularly directs the work of two or more other employees;" and (3) "[w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100(a)(2)-(4). The administrative exemption applies, in relevant part, to employees whose primary duty: (1) "is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (2) "includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(2)-(3).[4]

Under both exemptions, an employee's "primary duty" is "the principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a). To determine an employee's primary duty, a court should analyze "all the facts in a particular case, with the major

---

[3] Both the NJWHL and the NYLL incorporate by reference the relevant provisions of the Fair Labor Standards Act's ("FLSA") executive and administrative exemptions.  See N.J.A.C. § 12:56-7.2 (adopting provisions of 29 C.F.R § 541); 12 N.Y.C.R.R. 142-2.2 (incorporating provisions of 29 U.S.C. §§ 207, 213).

[4] See also 29 C.F.R. § 541.708 (recognizing combination exemptions for "[e]mployees who perform a combination of exempt duties as set forth in the regulations in this part for executive, [and] administrative . . . employees").

emphasis on the character of the employee's job as a whole." Id.  Factors for consideration include "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; [and] the employee's relative freedom from direct supervision." Id.

## IV. ANALYSIS

Defendant argues that class certification should be denied because Plaintiffs have failed to establish the requirements of Rule 23 by a preponderance of the evidence.  The Court agrees.

### A. Class Certification[5]

#### 1. Numerosity

Under Rule 23(a)(1), "[n]umerosity is shown where traditional joinder of parties would be unworkable." Dominguez v. Galaxy Recycling Inc., No. 12-7521, 2015 WL 13845381, at *1 (D.N.J. Dec. 10, 2015) (internal citation and quotation marks omitted).  While a plaintiff need not "offer direct evidence of the exact number . . . [of] class members," it "must show sufficient circumstantial evidence specific to the . . . parties[] and geographic areas actually covered by the class definition to allow a district court to make a factual finding." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 596 (3d Cir. 2012).  "Only then may the court rely on 'common sense' to forgo precise calculations and exact numbers." Id. at 596.  Generally, if the "potential number of plaintiffs exceeds 40, the [numerosity] prong" is satisfied. Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

Numerosity is met here.  The record indicates that Defendant operated approximately 100 stores in New York and 63 stores in New Jersey during the relevant class periods. Meredith Decl. ¶ 3.  Over 60 of the New York stores and "just under 30" of the New Jersey stores are open 24

---

[5] Defendant opposes Plaintiffs' Rule 23(b)(3) request only on predominance, superiority, and ascertainability grounds. See Def.'s Opp. at 35-49.  The Court, however, will address each Rule 23(a) prerequisite.

hours, seven days per week.  Id. ¶ 15.  Typically, each store employs between four and 15 ASMs, and "ASMs frequently rotate into and out of different ASM roles."  Id. ¶¶ 7, 10.  Defendant concedes that it employed approximately 2,393 ASMs in New York and 921 ASMs in New Jersey during the class periods, id. ¶ 8, and maintained the Overnight ASM position during that time, Meredith 30(b)(6) Dep. Tr. at 17:18-21, ECF No. 103.10.  While Defendant notes that it "does not maintain a specific database of Overnight ASMs" and "anticipates fewer people have worked as Overnight ASMs" during these periods, Def.'s Opp. at 11 n.4, it does not challenge numerosity.  On this record, the Court is satisfied that the putative classes are sufficiently numerous.

### 2. Typicality

Under Rule 23(a)(3), Plaintiffs must demonstrate that their claims are "typical of the claims . . . of the class."  Fed. R. Civ. P. 23(a)(3).  "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."  In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 531 (3d Cir. 2004) (internal citation and quotation marks omitted).  The Third Circuit has "set a 'low threshold' for typicality."  In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 428 (3d Cir. 2016) (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 182-83 (3d Cir. 2001)).  Accordingly, "[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct."  Id. at 428 (internal citations and quotation marks omitted).

Here, Plaintiffs' claims are typical of the claims of the putative classes.  Both Plaintiffs and the classes' claims arise from Defendant's alleged misclassification of Overnight ASMs as exempt employees and failure to pay Overnight ASMs overtime compensation.  Because Plaintiffs and the

class members seek the same relief based on the same alleged wrongful conduct, typicality has been met. See Atis v. Freedom Mortg. Corp., No. 15-3424, 2016 WL 7440465, at *7 (D.N.J. Dec. 27, 2016) (employer's alleged misclassification of employees supported finding of typicality); Swank v. Wal-Mart Stores, Inc., No. 13-1185, 2018 WL 2684102, at *4 (W.D. Pa. June 5, 2018) (same).

### 3. Adequacy of Representation

To satisfy Rule 23(a)(4), Plaintiffs must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy of representation requirement encompasses two distinct inquiries. First, "[i]t tests the qualifications of class counsel and the class representatives." Nat'l Football League Players Concussion Injury Litig., 821 F.3d at 428. Second, it "root[s] out conflicts of interest within the class." Id. "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 183 (3d Cir. 2012).

Plaintiffs have demonstrated adequacy of representation. Defendant does not dispute, and there is nothing in the record to suggest, that Plaintiffs' interests and incentives are anything other than aligned with those of the proposed classes. Furthermore, Plaintiffs' counsel has extensive experience litigating wage-and-hour misclassification cases, and the Court is satisfied that they are able and qualified to represent the Plaintiffs and proposed classes here. See Gershbaum Decl., Ex. 77, ECF No. 97.50. Therefore, adequacy has been met.

### 4. Commonality and Predominance

To establish commonality under Rule 23(a)(2), Plaintiffs must "share at least one question of fact or law with the grievances of the prospective class.'" In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig., 795 F.3d 380, 397 (3d Cir. 2015) (quoting Rodriguez v. Nat'l

City Bank, 726 F.3d 372, 382 (3d Cir. 2013)). "What matters to class certification . . . is not the raising of common questions . . . but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." Ferreras v. Am. Airlines, Inc., 946 F.3d 178, 185 (3d Cir. 2019) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)) (emphasis in original) (internal quotation marks omitted).

By contrast, Rule 23(b)(3)'s "predominance requirement asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Ferreras, 946 F.3d at 185 (internal citation and quotation marks omitted). While "[t]he commonality and predominance requirements are closely linked . . . the Rule 23(b)(3) predominance requirement is far more demanding than the commonality requirement found in Rule 23(a)." Id. (internal citation and quotation marks omitted). Indeed, "where an action is to proceed under Rule 23(b)(3), the commonality requirement is subsumed by the predominance requirement." Id. (internal citation and quotation marks omitted). Therefore, the Court will analyze both requirements together.

Plaintiffs have not shown that common questions will predominate over individual issues. While Plaintiffs claim that there are several questions common to the classes, including the appropriate measure of damages, the record reveals significant differences in the actual duties of Overnight ASMs such that class treatment is not warranted.

### a. Differences Among Putative Class Members' Duties

For common questions to predominate here, Plaintiffs must show that Overnight ASMs' exemption status can be determined on a class-wide basis. After carefully reviewing the record, the Court finds that Plaintiffs have not met their burden.

As an initial matter, Plaintiffs rely heavily on Defendant's corporate policies to argue that Overnight ASMs primarily performed the same non-exempt tasks. Corporate policies and job descriptions by themselves, however, are not determinative of exemption status. See In re Morgan Stanley Smith Barney LLC Wage & Hour Litig., No. 11-3121, 2016 WL 1407743, at *6 (D.N.J. Apr. 11, 2016) (noting that "the relevant question is not solely focused on the substance of [the employer's] policies," but is instead on "the actual work performed by the proposed class members"). Furthermore, several of the policies that Plaintiffs rely on actually undermine their argument that Overnight ASMs primarily engage in manual work. For example, while the Court recognizes that the "Job Profile: Overnight Assistant Manager" policy makes reference to Overnight ASMs "oversee[ing] and execut[ing] major modular resets and seasonal pad changes," the vast majority of responsibilities listed in the document concern Overnight ASMs' oversight and management of hourly associates. See Gershbaum Reply Decl., Ex. 106 at 11, ECF No. 103.29.[6] Such oversight is consistent with an exempt role. See 29 C.F.R. § 541.100(a)(2)-(3). Similarly, several of the excerpts from the "One Best Way" policy cited by Plaintiffs do not support their contention that Overnight ASMs' primarily performed non-managerial duties. Rather, from what the Court can discern from these excerpts, Overnight ASMs are primarily tasked with ensuring that stores are properly stocked, as opposed to performing manual duties themselves. See

---

[6] In addition to the "Job Profile: Overnight Assistant Manager" document, Plaintiffs cite to a "uniform description [that] applies to all ASMs companywide" to argue that Overnight ASMs' primarily perform non-managerial duties. See Pls.' Br. at 11. Although this job description does note certain "physical activities" ASMs must perform to carry out the "essential functions" of their jobs, most of the duties outlined in the document are supervisory in nature. See ECF No. 97.46. These supervisory duties include hiring, training, and evaluating associates, ensuring associate compliance with store policies, and "providing direction and guidance on executing Company programs and strategic initiatives." Id. at 1.

Gershbaum Decl., Exs. 45 & 48, ECF Nos. 97.18 & 97.21.  Thus, Defendant's corporate policies do not establish predominance by a preponderance of the evidence.[7]

In addition, the Court is not persuaded that the declarations and deposition testimony in the record show that common issues will predominate.  Plaintiffs contend that "Overnight ASMs' actual duties[] establish[] that they are in essence associates who spend their time replenishing inventory and stocking."  Pls.' Br. at 11.  However, as courts in this District have repeatedly observed, "determining whether an employee is exempt involves a fact intensive inquiry."  In re Morgan Stanley Smith Barney LLC Wage & Hour Litig., 2016 WL 1407743, at *5 (collecting cases).  A review of the factual record here indicates that the primary duties of Overnight ASMs vary significantly, militating against class certification.  See Swank, 2018 WL 2684102, at *6 ("[T]he tasks and responsibilities of an [assistant manager] can vary wildly depending on which witness is speaking. Without a common narrative in the record as to what the [assistant managers] actually did on a day-to-day basis, this Court cannot extrapolate the primary duty of all [assistant managers] in Pennsylvania on a class-wide basis").

For example, Plaintiffs cite the testimony of several putative class members who stated that their primary duties involved unloading trucks, operating forklifts, stocking shelves, and sweeping.  See, e.g., Cox Dep. Tr. at 97:21-98:2; Pitter Dep. Tr. at 24:21-25:3, ECF No. 103.24; Ianniello Dep. Tr. at 21:7-24, ECF No. 103:16; Lewis Dep. Tr. at 19:14-20:4, ECF No. 103.17; Quiles Dep.

---

[7] Plaintiffs also make much of the fact that ASMs were required to "[f]ollow the company ASM routine."  Gershbaum Mov. Decl., Ex. 33, ECF 97.6.  However, the record indicates that many Overnight ASMs, including some of the Plaintiffs, did not adhere to any such routine.  Indeed, Plaintiff Cox testified that she was told "the routines were guidelines for time management" and did not follow them "because the manager and co-manager directed us to do other things."  Cox Dep. Tr. at 199:3-201:5, ECF No. 103.13.  Plaintiff Martin testified that she "would be surprised if anyone was following the routine" because Store Managers and Co-Managers direct them "not to follow the routine because stocking and zoning and cleaning the store is more important."  Martin Dep. Tr. at 82:11-83:4, ECF No. 103.21.  Other witnesses also testified that they did not follow a routine.  See, e.g., Parry Dep. Tr. at 139:10-140:1, ECF No. 103.6; Tomlins Dep. Tr. at 147:23-25, 236:13-238:8, ECF No. 103.3; see also Spencer Dep. Tr. at 84:12-85:7, ECF No. 103.11 (regional general manager's testimony that "[a]ssistant managers' days . . . are really too varied to really hold them to a specific routine day in and day out").

Tr. at 303:17-304:2, ECF No. 103.25.  By contrast, Defendant submitted declarations from other Overnight ASMs who reported that their main duties involved supervising the store and managing associates.  See, e.g., Ascione Decl. ¶ 9, ECF No. 98.4; Hemingway Decl. ¶¶ 5, 12, ECF No. 98.4; Parry Decl. ¶¶ 14-16, ECF No. 98.5; Cruz Decl. ¶¶ 6-8, ECF No. 98.4; Marino Decl. ¶¶ 6-12, ECF No. 98.5.  As Overnight ASM duties can vary significantly, the Court would need to conduct individualized, rather than class-wide, proceedings to determine each Overnight ASM's exemption status.

The record also reveals material differences in Overnight ASMs' ability to hire, fire, and promote employees.  Some Overnight ASMs never interviewed prospective hires, see Quiles Dep. Tr. at 149:14-19, others interviewed candidates but could not hire, see Davidson Dep. Tr. at 35:9-11, 45:3-5, ECF No. 103.14; Shea Dep. Tr. at 173:8-11, ECF No. 103.26, and still others had more discretion in the hiring process, see Hemingway Dep. Tr. at 149:20-25, 151:17-23, ECF No. 103.8 (testifying that he could "hire without the store manager"); Ascione Dep. Tr. at 155:1-157:4, ECF No. 103.7 (testifying that he could hire, subject to the Store Manager's initial approval and payroll budget).  Similarly, some Overnight ASMs did not have the authority to terminate employees or could not do so without the Store Manager's approval, see Cox Dep. Tr. at 343:7-9; Quiles Dep. Tr. at 306:8-10; Ianniello Dep. Tr. at 26:14-17, ECF No. 103.16; Lubinski Dep. Tr. at 24:17-29, ECF No. 103.18, while others stated that they had "final say" in termination decisions and had in fact terminated employees, see Cruz Dep. Tr. at 132:2-10, ECF No. 103.12; Parry Dep. Tr. at 101:6-102:22, ECF No. 103.6; Tomlins Dep. Tr. at 225:8-14; Baisre-DeLeon Decl. ¶ 20, ECF No. 98.4.  With respect to promotions, some Overnight ASMs did not have the authority to promote employees, see Martin Dep. Tr. at 287:5-7; Shea Dep. Tr. at 361:14-362:1, while others did, see Mumpton Dep. Tr. at 114:4-6, ECF No. 103.5; Ascione Dep. Tr. at 159:22-25.

Of the relevant cases cited by the parties, the Court finds that the instant record most closely resembles that of Swank. 2018 WL 2684102. In Swank, the plaintiffs sought to certify a class of Wal-Mart assistant managers who worked in Pennsylvania. Id. at *3. The plaintiffs claimed that Wal-Mart improperly classified its assistant managers as exempt executive employees because "[assistant managers] were managers in name only, and . . . Wal-Mart relied on its [assistant managers] to perform the work of hourly associates without overtime pay as a cost-savings method." Id. at *1. Like here, both parties in Swank submitted declarations and deposition testimony from assistant managers regarding their job duties. Id. at *5-6. The plaintiffs' witnesses stated that they mostly performed non-exempt duties, while the defendant's witnesses stated that they spent most of their time on exempt work. Id. at *6. Moreover, some declarants asserted that they had limited authority to hire, fire, and evaluate employees, while "other declarants explained that they had much more discretion regarding such matters." Id. at *7. In denying the plaintiffs' motion for class certification, the court emphasized that the assistant managers' varied duties precluded a finding of predominance:

> [T]he Court's review of the record indicates that although the [assistant managers'] jobs were similar in some ways, the [assistant managers] had a wide array of individualized experiences that varied significantly in ways that bear materially on the analysis of their primary duties. Despite the Plaintiffs' arguments to the contrary, it is plain that different [assistant managers] spent their days performing vastly different tasks and working under varying levels of supervision. Accordingly, the Court concludes that individual questions predominate in this case and therefore the predominance requirement of Rule 23(b)(3) has not been met.

Id.

Here, as in Swank, the declarations and deposition testimony proffered by both parties demonstrate significant differences in the Overnight ASMs' primary duties. As detailed above, some Overnight ASMs mainly performed manual work, while others spent the majority of their time supervising associates. Some were heavily involved in the hiring, termination, and promotion

processes, while others were not. As Overnight ASM duties vary widely, the Court would need to conduct individualized inquiries to determine each class member's exemption status.[8]

In support of their argument that common issues predominate here, Plaintiffs rely heavily on Ferreras v. Am. Airlines, Inc., No. 16-2427, 2018 WL 1169127 (D.N.J. Mar. 6, 2018), rev'd, 946 F.3d 178 (3d Cir. 2019), and Damassia v. Duane Reade, Inc., 250 F.R.D. 152 (S.D.N.Y. 2008). See Pls.' Br. at 40-43. Both cases, however, are distinguishable. Ferreras involved class claims for unpaid pre-shift, post-shift, and meal break work. 946 F.3d at 181. After Plaintiffs filed the present motion, the Third Circuit reversed Ferreras and found that the district court had erroneously applied a conditional certification standard to the Rule 23 class certification motion. Id. at 184. The Third Circuit concluded that the Ferreras plaintiffs had not demonstrated predominance because, like here, they would need "to offer individualized proof" to establish their claims. Id. at 186.

Damassia is similarly distinguishable. Damassia, an out-of-circuit case, involved misclassification claims brought by assistant managers who worked at a drugstore chain. 250 F.R.D. at 154. While the Damassia court found that the defendant's uniform corporate policies supported a finding of predominance, it also found, based on deposition testimony, that the assistant managers' responsibilities were "largely consistent." Id. at 159-60. The declarations and deposition testimony in the present record do not compel the same conclusion.

---

[8] Plaintiffs argue that Swank is distinguishable because the plaintiffs in that case sought to certify a class of all assistant managers, not just Overnight ASMs. Pls.' Reply at 6-7. This distinction is immaterial. As explained above, the classes proposed by Plaintiffs here suffer from the same infirmities as the class proposed in Swank—namely, the putative class members' work experiences "varied significantly in ways that bear materially on the analysis of their primary duties." 2018 WL 2684102, at *7.

Overall, a review of the record here indicates that Overnight ASMs' experiences differ considerably in material respects. The Court therefore concludes that individual issues will predominate, and class treatment is not appropriate.

### b. Defendant's Declarations

Plaintiffs ask the Court to disregard Defendant's declarations because: (1) the declarants who were deposed stated that they would opt out of a class, and therefore are not "part of a representative discovery subset;" and (2) the declarations are inconsistent with the declarants' deposition testimony. Pls.' Br. at 22-26. The Court declines to do so.

As to the first issue, Plaintiffs do not cite to any supportive case law, and courts have routinely considered counter-declarations proffered by a defendant on a motion for class certification. See, e.g., Morgan Stanley Smith Barney LLC Wage & Hour Litig., 2016 WL 1407743, at *6; Swank, 2018 WL 2684102, at *6.

As to the second issue, while Plaintiffs identify purported discrepancies between eight Overnight ASMs' declarations and depositions, the record does not fully support Plaintiffs' characterization of the evidence. As just one example, Plaintiffs claim that Jennifer Tomlins, a former Overnight ASM, made inconsistent statements regarding Overnight ASM routines. According to Plaintiffs, Tomlins declared that her job was not "routineable," but testified at her deposition about "the routine she typically followed" and her belief that Defendant's "corporate offices wanted her to follow routines." Pls.' Br. at 23. While Tomlins' declaration does state that her "job was not 'routineable,'" Tomlins Decl. ¶ 22, ECF No. 98.5, contrary to Plaintiffs' assertions, Tomlins made clear at her deposition that she did not follow a routine and was expected to exercise judgment to perform her job. Tomlins Dep. Tr. at 147:23-25, 236:6-12. The deposition

testimony cited by Plaintiffs describes not a work routine, but rather text message communications Tomlins had with her Store Manager. Tomlins Dep. Tr. at 165:23-168:8.

In other instances, Plaintiffs cite to immaterial inconsistencies. By way of illustration, Plaintiffs argue that Natalie Cruz, a former Overnight ASM, misstated the amount of time she spent performing non-managerial tasks. Plaintiffs claim that Cruz declared she spent all of her time managing, but testified at her deposition to performing "all kind [sic] of hourly work tasks." Pls.' Br. at 24. It is true that Cruz's declaration states that she "spent 100% of [her] time managing." Cruz Decl. ¶ 17, ECF No. 98.4. However, the deposition testimony cited by Plaintiffs does not contradict the crux of Cruz's declaration that she primarily engaged in managerial work. Although Cruz testified that she sometimes performed discrete non-managerial tasks, including as a way of teaching associates, nowhere in the cited testimony does Cruz imply that these tasks occupied a significant part of her workday. To the contrary, she emphasized that there often was not enough time to do anything other than manage associates. See Cruz Dep. Tr. at 94:17-23.

Similarly, Plaintiffs claim that Stephen Pangle declared he had the ability to hire and fire and did not perform non-managerial work, but testified to the contrary at his deposition. See Pls.' Br. at 24. First, Pangle testified that he generally performed non-managerial tasks "as [he] wanted to" and "as a form of leadership" to show associates that he was "part of them," rather than out of necessity. Pangle Dep. Tr. at 78:7-80:6, ECF No. 103.2. His "main job," however, was "to manage the people who were doing the hands-on overnight work." Pangle Dep. Tr. at 125:7-11. Second, as Plaintiffs acknowledge, Pangle clarified that his declaration referred to his ability to hire as a "daytime ASM," as opposed to as an Overnight ASM. See Pangle Dep. Tr. at 114:19-23; Pls.' Reply at 13, ECF No. 103. Finally, and perhaps most importantly, the fact that Pangle did not hire as an Overnight ASM does not cause common issues to predominate here. As discussed above, it

is clear that Overnight ASM involvement in the hiring process varies greatly. The discrepancies cited by Plaintiffs, to the extent they exist, do not change the Court's analysis. The Court reaches the same conclusion as to the other witness inconsistencies alleged by Plaintiffs.[9]

Plaintiffs also argue, apparently in the alternative, that while Defendant's declarations are "largely incredible," the declarations and the declarants' deposition testimony nevertheless support Plaintiffs' request for class certification. Pls.' Br. at 44. The Court disagrees. The cases cited by Plaintiffs—Costello v. Kohl's Illinois, Inc., No. 13-1359, 2014 WL 4377931 (S.D.N.Y. Sept. 4, 2014) and Damassia v. Duane Reade, Inc., No. 4-8819, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006)—are inapposite. Id. Both Costello and Damassia involved motions for conditional certification, where, unlike class certification motions, courts are tasked with making a preliminary determination under a "very low" evidentiary standard. See Costello, 2014 WL 4377931 at *5 (citing Damassia, 2006 WL 2853971 at *3). Here, by contrast, the Court must "be satisfied by a preponderance of the evidence that the plaintiff has proven each of . . . Rule[ 23]'s requirements." Ferreras v. Am. Airlines, Inc., 946 F.3d 178, 184 (3d Cir. 2019). As discussed above, the Court's review of record as a whole, including these declarations and deposition testimony, indicates significant disparities in Overnight ASM experiences such that individual, rather than common, issues would predominate. Therefore, class certification is inappropriate.

### 5. Superiority

The Court also finds that superiority has not been met. To proceed under Rule 23(b)(3), Plaintiffs must demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating superiority, the

---

[9] Plaintiffs cite to In re High-Tech Employee Antitrust Litig., 985 F. Supp. 2d 1167 (N.D. Cal. 2013), to argue that the Court should assign more weight to Defendant's corporate policies than its witnesses' statements because the witnesses' statements were inconsistent with the policies. See Pls.' Br. at 28-30. As explained above, however, many of the policies Plaintiffs cite undermine their own arguments, not Defendant's.

Court should consider, inter alia, "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D).  Courts have found that "management difficulties are less likely where common questions predominate." Atis v. Freedom Mortg. Corp., No. 15-3424, 2016 WL 7440465, at *8 (D.N.J. Dec. 27, 2016).  As explained above, however, because of the extensive differences within the proposed classes, determining each Overnight ASM's primary duties will require individualized inquiries.  Given both the number of potential class members and that an Overnight ASM's exemption status necessarily depends on their primary duties, the Court finds that there would be significant difficulties in adjudicating this matter on a class-wide basis.[10]

### B. Issue Certification

Finally, the Court denies Plaintiffs' threadbare request for certification on the issue of liability.  See Pls.' Br. at 49.  "[A] court's decision to exercise its discretion under Rule 23(c)(4), like any other certification determination under Rule 23, must be supported by rigorous analysis." Gonzalez v. Corning, 885 F.3d 186, 202 (3d Cir. 2018) (internal citation and quotation marks omitted).  The Third Circuit has recognized that although "certifying a Rule 23(c)(4) class is analytically independent from the predominance inquiry under Rule 23(b)(3), a case may present concerns relevant to both," particularly where, as here, "Plaintiffs offer no theories of liability for which classwide treatment is apt." Id. at 202.  As detailed above, Plaintiffs have not established that liability can be determined on a class-wide basis.  The Court therefore declines to certify a liability issue class.  See Swank, 2018 WL 2684102, at *7 (denying issue certification because "liability cannot be determined on a class-wide basis"); Gonzalez, 885 F.3d at 202 (3d Cir. 2018)

---

[10] As the Court finds that Plaintiffs are unable to satisfy the explicit requirements of Rule 23(b)(3), it does not address the parties' arguments regarding the implicit ascertainability requirement.

(affirming denial of certification of liability-only issue class under Rule 23(c)(4) because liability question was not suitable for class resolution).[11]

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion is **DENIED**. An appropriate Order will follow.

Dated: April 23, 2020

>                             */s Madeline Cox Arleo*
>                             **HON. MADELINE COX ARLEO**
>                             **UNITED STATES DISTRICT JUDGE**

---

[11] In a footnote in their reply brief, Plaintiffs appear to request, contrary to the apparent position they take in their moving brief, issue certification of a damages class. See Pls.' Reply at 3 n.4. Plaintiffs do not cite to any supportive caselaw, and the Court declines this threadbare request, as well.